UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CIV-60183-BLOOM/Valle

JEROME DAVIS, JR.,

    Plaintiff,

v.

UPS FREIGHT SERVICES, INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court upon Defendant UPS Freight Services, Inc.'s Motion for Summary Judgment, ECF No. [25]. The Court has reviewed the motion, all supporting and opposing filings, and the record in the case. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. INTRODUCTION AND MATERIAL FACTS

This action stems from Defendant, UPS Freight Services, Inc.'s ("UPS") alleged failure to promote Plaintiff Jerome Davis, Jr. to the position of Driver due to his race. *See* ECF No. [12] at ¶¶ 14-16, 21, 29, 35, 41. As a result of the purported discrimination, Davis timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and received a right to sue on September 26, 2013. *Id.* at ¶¶ 22-23. On January 24, 2014, Davis initiated the instant litigation, bringing claims for failure to promote, cognizable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Count I), and the Florida Civil Rights Act of 1992, §§ 760.01 *et seq.*, Florida Statutes. *Id.* at ¶ 1.

Davis, an African-American male, was hired as a part-time dockworker by Overnite Transportation Company in August 2005, where he was primarily responsible for forklift operation. ECF No. [26] at ¶ 1; ECF No. [28-1] at 18:3-5, 19:14-20:2. Later in 2005, UPS acquired Overnite Transportation Company and transferred Davis to the Fort Lauderdale Service Center, where his father is employed as a full-time driver.[1]  ECF No. [26] at ¶¶ 2-3; ECF No. [28-1] at 13:8-14. As time progressed in the Fort Lauderdale Service Center, Davis was encouraged to advance his career by pursuing a commercial driver's license ("CDL"), which he obtained in 2009. ECF No. [26] at ¶ 6; ECF No. [28-1] at 10:3-6; ECF No. [36-2] at 11:6-15. After receiving his CDL, Davis was given additional responsibilities at the Service Center. ECF No. [28-1] at 20:9-25.

Advancement opportunities are handled in a particular manner at UPS, notably, open positions are awarded to "the most senior *qualified* individual." ECF No. [27-3] at ¶ 4 (emphasis in original). Driver positions at UPS are not only regulated internally, but also externally by the United States Department of Transportation ("DOT"). *Id.* at ¶ 6. In order to qualify for a driver position, the employee is required to possess a CDL, pass a road test administered by a UPS-certified driver-trainer, and possess all the necessary endorsements including "doubles" and "triples" endorsements, a hazardous materials endorsement, as well as a drug test and medical examiner's certificate obtained by a UPS authorized clinic.[2]  *Id.*  In 2011, when Davis was at the

---

[1] Thus, for all intents and purposes, Davis's date of seniority as a part-time dockworker was August 2005, irrespective of the transfer to UPS. ECF No. [26] at ¶ 4.

[2] The District Human Resources Operations Manager, Herb Garrett, and Dispatch Supervisor for the Fort Lauderdale Facility, Eric Lowe, attested to these requirements. *See* ECF Nos. [27-1] and [27-3]; *see also* ECF No. [36-2] at 12:23-13:22; ECF No. [36-1] at 46:6-17. However, neither individual was able to testify as to where these policies were written down, or whether Davis was specifically informed of the policies. *See* ECF No. [36-2] at 13:23-14:7; ECF No. [36-1] at 54:9-23, 62:20-25.

top of the seniority list, a driver position opened up. ECF No. [28-1] at 26:5-24:2. According to Davis, he actively sought this position, submitting a bid and expressing interest to his supervisors. *Id.* at 26:22-24, 27:23-28:11.

Despite Davis' apparent enthusiasm, he did not obtain the position. *See* ECF No. [12] at ¶ 15. Instead, in May 2011, another individual, Kevin Schley, received the driving position. *Id*; ECF No. [26] at ¶ 38. Schley, who is of Caucasian descent, did not have seniority over Davis at the time of the hiring; however, as of January 2011, Schley was in possession of a CDL, had passed his road test, and allegedly had obtained all the necessary endorsements required to become a UPS driver. ECF No. [26] at ¶ 38. On the contrary, Davis cannot identify with certainty whether he was in possession of the necessary endorsements that would otherwise qualify him for the job. While Davis claims he received a medical certificate in 2010, he is unable to indicate that this certificate and/or drug test was obtained from a UPS-certified facility. ECF No. [28-1] at 31:3-32:2. Further, Davis cannot recall whether he provided a copy of the 2010 medical certificate to UPS in 2011, merely stating that he "could have" done so. *Id.* at 32:9-11, 34:11-20, 37:5-38:7. What is certain is that on June 5, 2011, he obtained a medical certificate and drug test. ECF No. [28-1] at 32:18-34:10, 38:8-10; *see also* ECF No. [37-1] at 30-31. Additionally, Davis did not receive his hazardous materials endorsement prior to Schley's promotion. *See* ECF No. [28-1] at 66:1-67:4.

Although Schley passed his road test in December 2010, see ECF No. [27-3] at ¶ 9, Davis's attempts at driving were not so successful. Davis was initially afforded an opportunity to take the road test prior to 2011, but was late to the appointment and was not able to take the test that day as a result. *See* ECF No. [28-1] at 56:9-57:6. On his next two attempts, Davis was unable to satisfactorily complete the test. *See id.* at 54:2-23. After the first failed attempt,

Davis's supervisor noted that he had to drive and shift the vehicle better. *Id.* at 55:8-20. The individual administering the test noted that Davis was not "safety conscious," failing to operate the vehicle in a manner that would not pose a risk to drivers and pedestrians alike. *See* ECF No. [28-4] at 26:8-19, 29:13-30:3. Nonetheless, Davis was informed that he would be able to take the test again. ECF No. [28-1] at 55:8-20. After his second attempt, occurring *subsequent to* the filling of the driving position at issue, it was noted that Davis still needed improvement, particularly with shifting and paying sufficient attention to pedestrians. *Id.* at 77:20-28:3. When questioned as to whether the employee administering Davis' driving tests harbored any prejudices, Davis stated that he had no reason to believe that he was a racist. *Id.* at 51:8-25. Ultimately, Davis did not pass his road test until June 5, 2012, well after the driver position had been filled by Schley. *Id.* at 63:24-64:8; ECF No. [26] at ¶ 24; ECF No. [37-1] at 41.

As noted, Schley was able to pass his road test in December 2010. ECF No. [27-3] at ¶ 9. Schley's test was administered by Lemmie Faulk. *Id.* Although Faulk is not a certified driver-trainer, he is an employee with almost thirty years of experience as a UPS driver. *See* ECF No. [26] at ¶ 26; ECF No. [27-1] at ¶ 9. After learning that Schley had been tested by Faulk, an African-American, Davis requested Faulk administer his test. ECF No. [28-1] at 62:7-18. However, the terminal manager denied this request, claiming that the test could only be conducted by a certified driver-trainer. *Id.*

During all relevant time periods UPS has maintained an anti-nepotism policy, known internally as the "Relative Hire Policy." ECF No. [27-3] at ¶ 8; *see also* ECF No. [37-1] at 11-18 (containing a physical copy of the updated policy).[3] Under this policy, "[r]elatives of

---

[3] The Court is cognizant of the fact that this copy of the policy is dated after the relevant time period. However, UPS has also produced an undated, internal memorandum outlining the policy, and has testified to the policy's accuracy.

4

employees in positions up to and including the level of center/business manager are only eligible to be hired into part-time bargaining unit positions." ECF No. [26] at ¶ 39; ECF No. [37-1] at 12. As Davis's father had been a full-time driver at the Fort Lauderdale location for the past twenty-eight years, this policy seemingly precluded Davis from obtaining the position, regardless of his qualifications.[4] *Id.* at ¶¶ 40-41. Despite these purported impediments to his advancement, Davis contends that UPS failed to promote him even though he was otherwise qualified for the position. *See* ECF No. [14]. Pointing to the fact that the Schley, a less-senior, white employee, received the position, Davis asserts that he was not given the position on account of his African-American descent. *Id.* Since Davis passed his road test on June 5, 2012, UPS contends that it has not hired any new drivers or promoted any current employees to full-time driver positions in the Fort Lauderdale Service Center. ECF No. [27-1] at ¶ 10.

### III. SUMMARY JUDGMENT STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and

---

[4] In November 2013, UPS modified the policy to allow relatives to advance in the company; Davis was informed of this fact. ECF No. [26] at ¶ 43; ECF No. [28-1] at 120:10-13.

5

draws all reasonable inferences in his favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).
6

## VI. ANALYSIS[5]

A. Applicable Law and Analytical Framework

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Whether discrimination has occurred may be demonstrated though either direct or circumstantial evidence. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).  Direct evidence establishes discriminatory intent without inference. ("[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a protected classification, constitute direct evidence of discrimination.") *Kilpatrick v. Tyson Foods, Inc.*, 268 F. App'x 860, 862 (11th Cir. 2008).  Here, Davis has not put forth any direct evidence of discrimination on the part of UPS.  The record is devoid of statements made by decision makers involved in the employment decision that indicate he was not promoted to driver due to his race.  Therefore, Davis relies on circumstantial evidence to establish his case.

When confronted with an employment discrimination claim founded upon circumstantial evidence, courts generally utilize the *McDonnell Douglas* burden-shifting framework.  *See Aristyld v. City of Lauderhill*, 543 F. App'x 905, 907 (11th Cir. 2013); *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 792 (11th Cir. 2011); *Chapman v. Al Transport*, 229 F.3d 1012,

---

[5] Case law applicable to Title VII is equally applicable to claims brought under the Florida Civil Rights Act, § 760.01 *et seq. Wallace v. Pub. Health Trust of Dade Cnty.*, 370 F. Supp. 2d 1247, 1250 n.2 (S.D. Fla. 2005) (citing *Fla. State Univ. v. Sondel*, 685 So. 2d 923, 925 (Fla. 1st DCA 1996)); *see also Forbes v. City of N. Miami*, 509 F. App'x 864, 867 n.1 (11th Cir. 2013) ("Our precedent interpreting Title VII applies to claims arising under the FCRA, and we therefore need not analyze the FCRA separately." (citing *Holland v. Gee*, 677 F.3d 1047, 1054 n.1 (11th Cir. 2012))).  As such, it is appropriate for the Court to analyze Counts I and II of Davis's Amended Complaint simultaneously.

1024 (11th Cir. 2000). In order to establish a prima facie case of discrimination based on a failure to promote, a plaintiff must demonstrate: "(1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other employees, who were equally or less qualified but were not members of the protected class, were promoted." *Sridej v. Brown*, 361 F. App'x 31, 34 (11th Cir. 2010) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004)). After the plaintiff establishes a prima facie case, the employer then bears the burden of articulating a legitimate and nondiscriminatory reason for the employment action. *Wilson*, 376 F.3d at 1087. If the employer is able to satisfy this burden, the presumption of discrimination is rebutted, and the burden once again falls on the plaintiff to demonstrate that the alleged reason is actually a pretext for discrimination. *Id.* Irrespective of the stage of the analysis, the plaintiff bears the burden of proving the unlawful discrimination. *Aristyld*, 543 F. App'x at 907 (citing *Joe's Stone Crabs*, 296 F.3d at 1273).

B. Plaintiff Cannot Satisfy his Initial Burden under the *McDonnell Douglas* Framework

The parties do not dispute all prongs of Davis' prima facie case. Rather, only the third prong is at issue. The dispositive inquiry is whether Davis was qualified for the UPS driver position; if Davis was not qualified for the driver position, the Court's inquiry need not proceed further. Initially, Davis appears to assert that a CDL was all he was required to obtain, citing to the collective bargaining agreement ("CBA") between Davis's union and UPS. *See* ECF No. [35-1]. However, the language of the CBA does not indicate that a CDL is the *only* requirement, but simply that it is *one* of the requirements. UPS's ability to hire drivers is subject to various limitations imposed by the CBA, internal policies, and DOT regulations. Notably, regulations governing commercial drivers require certifications beyond the mere possession of a CDL. *See*

49 C.F.R. § 391.45 (requiring a medical examination); 49 C.F.R. § 383.93 (requiring various, state-issued endorsements).

The majority of Davis's argument focuses not on whether he failed to complete the prerequisites UPS asserts were necessary for the driver position (as it is undisputed that he did not pass a road test until June 2012), but, rather, whether these supposed qualifications are objectively verifiable. *See* ECF No. [34] at 10-12. The Eleventh Circuit in *Vessels v. Atlanta Independent School System* held that a plaintiff need only show that he or she satisfied the employer's *objective* qualifications to demonstrate that he or she is qualified for the position; subjective qualifications are inapplicable with regard to the plaintiff's prima facie case. 408 F.3d 763, 768-69 (11th Cir. 2005); *see also Greer v. Birmingham Beverage Co., Inc.*, 291 F. App'x 943, 945 (11th Cir. 2008). Objective qualifications, the Court stated, could be established by "evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession." *Vessels*, 408 F.3d at 769 (emphasis in original). The Court held that the defendant could not rely on subjective criteria, such as "lack[ing] the [preferred] leadership style," to find that the plaintiff was not qualified for the position. *Id.* at 768-69. On the other hand, education, years of experience, and state certification levels required for a particular position were determined to be objectively verifiable criteria relevant to the establishment of the plaintiff's prima facie case. *Id.* Other courts have found that subjective interpretations of arguably objective qualifications can also fail to defeat a plaintiff's prima facie case. *See Martin v. Estero Fire Rescue*, 2014 WL 3400974, at *8 (M.D. Fla. July 11, 2014) (holding that even when an internal policy dictated that illegal drug users were ineligible for the job, evidence of another employee's usage, coupled with defendant's decision to not terminate that individual, showed

that that the policy was dependent upon a subjective review of the circumstances and, therefore, not objectively verifiable).

Davis contends that UPS's stated qualifications are enigmatic. Relying on *Vessels*, Davis asserts that UPS cannot show any written policy and is otherwise unable to point to any objective requirements establishing that a UPS driver must pass a road test, obtain a UPS-approved medical examiner's certificate, obtain doubles, triples, and hazmat endorsements, and receive UPS driver training prior to becoming a UPS driver. *See* ECF No. [34] at 10-12. Essentially, Davis characterizes UPS's requirements as subjective solely as a result of UPS representatives' inability to identify and produce a physical copy of such prerequisites. Although a formal posting of the job requirements would likely satisfy the objectivity requirement, see *Santillana v. Florida State Court System*, 2011 WL 722765, at *16 (M.D. Fla. Feb. 23, 2011), *aff'd*, 450 F. App'x 840 (11th Cir. 2012), Davis has cited no authority for the proposition that the stated criteria for a position must be written down, and/or formally posted, in order to be objectively verifiable. The Court is unable to locate the same.

Various representatives familiar with UPS's hiring requirements verify that the aforementioned requirements are indeed necessary for an individual to be eligible for a driver position. UPS has filed supplements with the Court indicating that certifications beyond simply possessing a CDL are required to become a UPS driver. *See* ECF No. [37-1] at 7, 10. Although the requirements were not posted in a manner in which Davis actually discovered them, he could have easily inquired of one of his superiors what steps needed to be taken in order to receive the position. Furthermore, Davis appears to have been aware of the requirements, critically, that a successful road test was required before becoming a driver. Merely because, at deposition, UPS's representatives could not identify where these requirements were listed does not negate

10

the fact that the prerequisites were objectively verifiable by an individual with initiative. Davis could have easily discovered what needed to be done in order to be qualified to become a UPS driver. Not only could Davis have discovered the additional requirements that would be imposed upon him, his testimony indicates that he was aware of the fact that further preconditions would be required. In his deposition, Davis clearly understood that, at minimum, a road test and medical certificate would be required before he could be elevated into a driver position. *See* ECF No. [28-1] at 30:8-31:21 ("Percy just told me I needed to pass a road test and get qualified."). It is evident that Davis was aware of certain prerequisites to becoming a UPS driver, but did not possess those qualifications at the time he submitted his bid for the vacant position. Because Davis failed to satisfy the prerequisites for obtaining the position at issue, he was not qualified for the driver position.

Although this is sufficient to conclude that Davis has not made out a prima facie case for failure to promote, the Court chooses to address the other deficiencies in Davis's prima facie case. First, Davis insinuates that he was never offered a road test when he initially obtained his CDL in 2009, see ECF No. [28-1] at 134:10-12, and that he was deliberately not afforded an opportunity to take the road test prior to the position being offered to Schley, see ECF No. [35] at ¶ 13. However, this is in direct contradiction to his deposition testimony where Davis stated that he was scheduled to take the road test at some point prior to 2011 but did not because he arrived late for the appointment, which had to be cancelled as result of his tardiness. *See* ECF No. [28-1] at 56:9-57:6. Furthermore, the Court is not in a position to adjudge whether an employer must proactively attempt to advance its employees. By this point it is axiomatic that federal courts do not sit "as a super-personnel department that reexamines an entity's business decisions." *Awaad v. Largo Med. Ctr., Inc.*, 564 F. App'x 541, 544 (11th Cir. 2014) (quoting *Elrod v. Sears,*

*Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). The record is devoid of evidence that UPS prohibited or otherwise sought to impede Davis's advancement in any way.[6]

Second, even assuming *arguendo* that Schley's road test was inappropriately administered by a non-certified UPS driver-trainer, Davis does not dispute that his test was overseen by a qualified individual. Davis cannot demonstrate that the administration of his road test was flawed in any way. Rather, Davis simply quarrels with the portrayal of his own performance, arguing that he actually operated the vehicle safely and effectively. *See* ECF No. [35] at ¶ 24. However, Davis's opinion that he performed the driving test admirably, without more, is insufficient to establish that it did, in fact, occur. *See Austin v. Progressive RSC, Inc.*, 265 F. App'x 836, 844 (11th Cir. 2008) ("However, a plaintiff's opinion that he was qualified for promotion, without more, is insufficient to establish that fact.") (citing *Cooper v. Southern Co.*, 390 F.3d 695, 743 (11th Cir. 2004)). It is undisputed that the road test administrator determined that Davis did not possess the minimum necessary skills to become a UPS driver. *See* ECF No. [26] at ¶ 18; ECF No. [35] at ¶ 18. Further, Davis himself states that he did not believe the driver-trainer to be racially biased, giving no indication of any discrimination with regard to *his* test. At most, Davis has presented evidence that Schley was given a road test by an African-

---

[6] It should be noted that Davis also hinted at the availability of a position opening after Mr. Schley's promotion in 2011. ECF No. [28-1] at 95:6-17. This is irrelevant to the instant litigation. Plaintiff's Amended Complaint does not include any allegations for failure to promote other than the one discussed herein. A claim under Title VII is subject to the exhaustion of administrative remedies doctrine, that is, in order to timely pursue a Title VII claim, the aggrieved party must first file a charge with the EEOC within 180 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Burgos-Stefanelli v. Napolitano*, 2010 WL 785802, at *8 (S.D. Fla. Mar. 5, 2010) (citation omitted). If not filed with the EEOC within the time limits prescribed by the statute, the claim is barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Even when timely filed, any subsequent judicial action is nonetheless limited to the scope of the EEOC complaint. *See Burgos*, 2010 WL 785802, at *8 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)). Davis' EEOC charge was filed in December 2011. *See* ECF No. [12] at ¶ 22. Any alleged discrimination occurring thereafter must go through the administrative process prior to review by this Court.

American non-driver-trainer, at the direction of his African-American terminal manager, in order to make it easier for him to succeed.  However, none of this evidence, even if taken as true, dispels the fact that Davis did not take a road test until after position had been filled despite being afforded an opportunity to do so prior to Schley's promotion, see ECF No. [28-1] at 56:9-57:6, Moreover, once the road test was administered, following standard protocol, Davis failed it. UPS was not obligated to defer hiring for the driver vacancy until Davis had completed his requirements.

As a result of this undisputed evidence, it is clear that, at the time of the vacancy, Davis was not qualified for the driving position. Indeed, Davis did not complete a road test until June 5, 2012, and the record is bereft of any evidence of discrimination pertaining to Davis's alleged attempts to advance his employment with UPS.  Because Davis has failed to demonstrate that he was qualified for the driver position at the time it was given to a person outside the protected class, he has failed to make out a prima facie case under the *McDonnell Douglas* framework.[7] Accordingly, the Court need not address the remaining two inquiries, to wit, whether UPS can articulate a legitimate, nondiscriminatory reason for not advancing Davis, and whether Davis can rebut the proffered reasons by showing they were merely pretextual.

C. Other Issues Meriting Discussion

While not required, the Court takes the opportunity to briefly address several arguments related to the remainder of the *McDonnell Douglas* analysis.  Assuming that Davis had properly

---

[7] There exists some confusion as to whether Davis is asserting that UPS failed to promote him to a full-time driver position or a dockworker with CDL.  A dockworker with CDL is permitted to drive UPS vehicles on the road despite not being classified as a driver. ECF No. [36-1] at 34:5-7.  However, as with a full-time driver position, before being granted permission to operate UPS's vehicles on the road, a dockworker with CDL must pass a road test.  *Id.* at 41:13-20. Although it has not been made clear by the parties as to how the dockworker with CDL classification is relevant to the fact that Davis was not promoted to a full-time driver position, the Court nonetheless finds that Davis was equally unqualified for such position.

asserted a prima facie case for failure to promote, the burden would then fall on UPS to demonstrate a legitimate and nondiscriminatory reason for Garcia's termination. *Wilson*, 376 F.3d at 1087; *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012). When resolving whether a defendant has made out valid reasons for termination, courts are not to adjudge the prudency or fairness of employment decisions. *See Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (noting that a court's "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision"). UPS has clearly articulated legitimate business reasons for failing to promote Davis to a full time driver position, specifically, that Davis did not possess the requisite certifications, he did not timely pass the road test, and he would be otherwise precluded from the position by virtue of UPS's anti-nepotism policy.

The next prong of the *McDonnell Douglas* framework centers on whether Davis can show that UPS's purported reasons for not promoting him are merely pretexts for discrimination. "[T]he opportunity provided to a plaintiff to show pretext is simply an opportunity to present evidence from which the trier of fact can find unlawful discrimination." *Kragor*, 702 F.3d at 1308 n.1; *see also Mitchell v. City of LaFayette*, 504 F. App'x 867, 869 (11th Cir. 2013); *Garcia v. DS Waters of Am., Inc.*, 372 F. App'x 925, 927 (11th Cir. 2010); *Chapman*, 229 F.3d at 1030; *Walach v. Shineski*, 2012 WL 664277, at *3 (S.D. Fla. Feb. 28, 2012). Davis argues that UPS failed to consider Schley's qualifications when promoting him to the driver position. *See* ECF No. [34] at 14-17. In *Joshi v. Florida State University Health Center*, 763 F.2d 1227 (11th Cir. 1985), the Eleventh Circuit held that "where a defendant did not consider the qualifications of the candidate from the protected class at the time of making the employment decision, it cannot later assert as a nondiscriminatory reason the superior qualifications of the candidate actually

promoted." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (citing *Joshi*, 763 F.3d at 1235-36). According to Davis, because Schley's qualifications were overlooked, UPS cannot argue that Schley was more qualified than Davis. Not only does the record indicate a contrary conclusion, see ECF No. [36-2] at 42:13-44:3, but also, *Joshi* is inapplicable to the instant scenario.

The Court in *Joshi* emphasized that an employer cannot hide behind the veil that the promoted employee is superior when it did not consider the qualifications of the plaintiff. 763 F.2d at 1235. In contrast, UPS does not attempt to hide behind the fact that Schley was *more* qualified than Davis, but instead merely asserts that Davis was not qualified by the simple fact that he did not possess the necessary endorsements and certifications. Critically, the Eleventh Circuit stated that a defendant's proffered reason for the employment decision will be deemed invalid when the qualifications of both individuals were not considered, not that such evidence is probative on the issue of pretext. *See id.* at 1235-37. Indeed, the *Joshi* Court never reached the pretext phase of the *McDonnell Douglas* analysis. *See id.* Therefore, Davis's proposition that neglecting the hired employee's qualifications is evidence of pretext, is without merit.

Furthermore, to the extent Davis claims that UPS's proffered reasons are illegitimate, the Court respectfully disagrees. This case is akin to *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344 (11th Cir. 2007). In *Springer*, the Court found *Joshi* to be inapplicable when the defendant was in a position "to have direct knowledge of [the plaintiff's] qualifications or lack thereof." *Id.* at 1348. Such a factual scenario existed in contrast to *Joshi*, where the plaintiff was not one of defendant's employees and therefore the defendant had to be active in procuring her qualifications in order to make an informed hiring decision. *See id.* Because the defendant had knowledge of both individual's qualifications, the Eleventh Circuit affirmed the

15

district court's finding that defendant's proffered reasons were legitimate and nondiscriminatory. *Id.* Similarly, the record reveals that UPS had knowledge of both individuals' qualifications when making the employment decision challenged herein.

## V. CONCLUSION

As Davis has been unable to show a genuine issue of material fact with regard to whether he was qualified for the position, he has failed to make out a prima facie case of discrimination and summary judgment is warranted.

Accordingly, it is hereby **ORDERED and ADJUDGED** that Defendant UPS Freight Services' Motion for Final Summary Judgment, ECF No. [25], is **GRANTED**. Summary judgment is entered in favor of Defendant UPS Freight Services and against Plaintiff Jerome Davis, Jr. Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, the Court will enter Final Judgment by separate order.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 4th day of August, 2014.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record